IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TINA LOUISE STANDIFER,

        Plaintiff,

        vs.                                1:16-cv-01364-LF

NANCY A. BERRYHILL,[1]
Deputy Commissioner for Operations
of the Social Security Administration,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Tina Louise Standifer's Motion to

Reverse or Remand for Payment of Benefits, or in the Alternative, for Rehearing, with

Supportive Memorandum (Doc. 18), which was fully briefed on September 21, 2017.  Docs. 20,

21, 24.  The parties consented to my entering final judgment in this case.  Docs. 4, 10, 12.

Having meticulously reviewed the record and being fully advised in the premises, the Court finds

that the Administrative Law Judge ("ALJ") applied the correct legal standards and her decision is

supported by substantial evidence.  The Court therefore DENIES Ms. Standifer's motion and

dismisses this case with prejudice.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final

decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the Deputy Commissioner for Operations of the Social Security
Administration, is automatically substituted for the former Acting Commissioner of the Social
Security Administration, Carolyn W. Colvin, as the defendant in this suit.  FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which
generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1581, as it is in this case.

applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotations and citations omitted ) (brackets in original).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*.

### III.    Background and Procedural History

Ms. Standifer is a 48-year-old woman who is a high-school graduate. AR 87, 243.[4] Ms. Standifer spent several years working at the "Base Exchange," first as a cashier, but she eventually was promoted to area sales manager. AR 52, 88, 280. In 2013, she was caught stealing from her employer. AR 52–53. After being fired from her position, Ms. Standifer

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 14-1 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

worked in deli service at Sandia Casino. AR 56–57. Between 2012 and 2014, she was a home healthcare worker for her mother. AR 70–71. Ms. Standifer filed an application for disability insurance benefits ("DIB") on March 6, 2015, and an application for supplemental social income ("SSI") on March 16, 2015,[5] alleging disability since September 2, 2014, due to post-traumatic stress disorder ("PTSD"), major depression, sleep apnea, high blood pressure, a back injury, acid reflux, gastritis, and factor five deficiency. AR 243–50, 278. The Social Security Administration ("SSA") denied her claims initially and on reconsideration. AR 97–186. Ms. Standifer requested a hearing on October 29, 2015. AR 187. On April 21, 2016, ALJ Lillian Richter held a hearing, at which Ms. Standifer and a vocational expert ("VE") testified. AR 45–96. ALJ Richter issued her unfavorable decision on August 2, 2016. AR 18–44.

The ALJ found that Ms. Standifer was insured for disability benefits through December 31, 2019. AR 23. At step one, the ALJ found that Ms. Standifer had not engaged in substantial, gainful activity since December 23, 2014, the alleged onset date.[6] *Id*. Because Ms. Standifer had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. AR 23. At step two, the ALJ found that Ms. Standifer had the following severe impairments: "morbid obesity; lumbar spondylosis with facet based arthropathy; osteoarthritis of the bilateral knees; obstructive sleep apnea; borderline traits; depression; and post-traumatic stress disorder (PTSD)." AR 23. The ALJ also found at step two that Ms. Standifer's factor V Leiden deficiency, symmetric sensorineural hearing loss and tinnitus, rhinosinusitis, plantar

---

[5] The ALJ notes in her decision that Ms. Standifer applied for disability insurance benefits and supplemental security income on March 5, 2015, (AR 21) but the application for DIB is dated March 6, 2015 (AR 243), and the application for SSI is dated March 16, 2015 (AR 245).

[6] The ALJ notes in her decision that Ms. Standifer's applications allege disability "beginning with her amended alleged onset date of December 23, 2014." AR 21. Ms. Standifer's applications do not indicate that she amended her alleged onset date, nor did she amend her onset date at the hearing. Ms. Standifer does not raise this as an error, however, and whether the alleged onset date was amended is not an issue in this case.

fasciitis, and gastrointestinal reflux disorder ("GERD") were all non-severe impairments. AR 24–25. At step three, the ALJ found that none of Ms. Standifer's impairments, alone or in combination, met or medically equaled a Listing. AR 25–27. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Standifer's RFC. AR 27–37. The ALJ found that:

> [C]laimant has the residual functional capacity to perform a limited range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), as follows:
>
> - The claimant is able to lift and/or carry and push and/or pull 10 pounds occasionally and 5 pounds frequently;
> - The claimant can stand and/or walk for two hours and sit for six hours in an eight-hour workday;
> - The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl;
> - The claimant can never climb ladders, ropes, or scaffolds;
> - The claimant can never balance;
> - The claimant should avoid exposure to extreme cold, extreme heat, extreme humidity, vibration, unprotected heights, and moving mechanical parts:
> - The claimant is limited to performing simple, routine work;
> - The claimant is limited to occasional contact with supervisors and co-workers and incidental contact with the public;
> - The claimant cannot work in close proximity to others (in order to avoid distractions); and
> - The claimant is limited to a workplace with few changes in the routine work setting and with a moderate noise level.

AR 27–28.

At step four, the ALJ concluded that Ms. Standifer was unable to perform her past relevant work as a human resource clerk, cashier, reorder clerk, deli service worker, or home health worker. AR 37. The ALJ found, however, that Ms. Standifer was not disabled at step five. Relying on the VE testimony, the ALJ concluded that Ms. Standifer still could perform jobs that exist in significant numbers in the national economy—such as buckler and lacer, dowel inspector, and circuit board screener. AR 38–39. Ms. Standifer requested review by the Appeals

Council, which denied the request on October 28, 2016. AR 1–5, 14–17. Ms. Standifer timely filed her appeal to this Court on December 15, 2016.[7] Doc. 1.

## IV. Ms. Standifer's Claims

Although her brief is not a model of clarity, Ms. Standifer appears to raise two main arguments for reversing and remanding this case: (1) that the ALJ erred in rejecting her treating physician's opinions when determining whether she met the Listings at step three; and (2) that "the ALJ erred in accepting the VE's testimony as sufficient to demonstrate capacity to perform the specific jobs identified or to establish [that] sufficient numbers of such jobs exist in the national economy." Doc. 18 at 3. Ms. Standifer also presents a number of sub-issues and arguments, many of which are poorly developed. The Court will consider and discuss only the contentions that have been adequately briefed. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir.2004) ("The scope of our review . . . is limited to the issues the claimant . . . adequately presents on appeal.").

## V. Discussion

### A. The ALJ's Step Two Findings

Ms. Standifer contends that she "specifically challenges the findings [that] her plantar [fasciitis] of both feet is non severe." Doc. 18 at 19. Ms. Standifer's step-two argument fails as a matter of law.

> An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A claimant must make only a de minimis showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). To that end, a claimant need only establish, and an ALJ need only find, one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir.2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe

---

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2–3.

impairments," which "was all the ALJ was required to do"). The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a severe medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . ., we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added). By its plain terms, the regulation requires a claimant to show only "a severe" impairment—that is, one severe impairment—to avoid a denial of benefits at step two. *Id.* (emphasis added). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Here, the ALJ found that seven other impairments were severe, AR 23, and proceeded through the other steps in the sequential evaluation process, AR 25–40. Thus, the ALJ's failure to find Ms. Standifer's plantar fasciitis was severe at step two is not reversible error and does not warrant remand.

B. The ALJ's Step Three Findings

"'At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity.'" *Drapeau v. Massanari*, 255 F.3d 1211, 1212 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996)). If the claimant has an impairment that is "listed," it is conclusively presumed to be disabling, and the claimant is entitled to benefits. *Lax*, 489 F.3d at 1085.

Plaintiff has the burden at step three to establish that his or her impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). To establish "that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085 (internal citation omitted)). Paragraph A of each Listing (except 12.05 and 12.09),

consists of a set of medical findings describing the disorder addressed by the Listing. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (effective May 24, 2016 to September 28, 2016).[8] Paragraph B criteria is a set of impairment-related functional limitations. *Id*. Additional functional criteria is set forth in paragraph C. *Id*. The Commissioner will assess the paragraph C criteria only if he or she finds that the paragraph B criteria are not satisfied. *Id*.

Here, the ALJ found that "[t]he severity of claimant's mental impairments, considered singly and in combination, does not meet or medically equal the criteria of Listing Sections 12.04 (*Affective Disorders*) and/or 12.06 (*Anxiety Related Disorders*)." AR 25. In making this finding, the ALJ determined that Ms. Standifer's symptoms did not satisfy the criteria of "paragraph B" or "paragraph C" of either Listing. AR 25–27. "The required level of severity for [12.04] is met when the requirements in both [paragraphs] A and B are satisfied or when the requirements in C are satisfied." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. "The required level of severity for [12.06] is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06. If an ALJ finds that the paragraph B criteria are not satisfied, the ALJ will analyze the paragraph C criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) ("We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied."). The ALJ is required to discuss the evidence and explain why she found that appellant was not disabled at step three. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

---

[8] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (effective May 24, 2016 to September 28, 2016) are the Listings in effect at the time of the ALJ's decision. Throughout this opinion, when the Court refers to the Listings, it is referring to the Listings in effect May 24, 2016 to September 28, 2016.

## 1. *The ALJ's Paragraph B Findings*

The ALJ found that Ms. Standifer's impairments did not meet the requirements of the paragraph B criteria for Listings 12.04 or 12.06. Paragraph B of Listings 12.04 and 12.06 describe the impairment-related functional limitations that are incompatible with the ability to do any gainful activity. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). At the time of the ALJ's decision, paragraph B of Listings 12.04 and 12.06 were identical.[9] *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(B), 12.06(B). Because both paragraph A and B criteria must be satisfied for a claimant to be considered disabled under Listings 12.04 and 12.06, the ALJ may analyze only the paragraph B criteria, as the ALJ did in this case.

Paragraph B requires that the claimant's symptoms found in paragraph A result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(B), 12.06(B). The ALJ found that Ms. Standifer did not exhibit at least two of the paragraph B criteria because she exhibited only a mild restriction in her activities of daily living; moderate difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation of an extended duration. AR 26–27.

Ms. Standifer attacks the ALJ's paragraph B findings in several ways. First, Ms. Standifer contends that the ALJ did not demonstrate her analysis of the paragraph B criteria and characterizes the evidence cited by the ALJ as "questionable." Doc. 18 at 4. I disagree. In her

---

[9] Beginning on January 17, 2017, the SSA significantly altered the language of these Listings, although they are still identical to each other. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(B), 12.06(B) (effective January 17, 2017 to March 26, 2017).

decision, the ALJ provided reasons for her findings, which are supported by substantial evidence. AR 26–27. For example, the ALJ notes that Ms. Standifer's function reports indicate that Ms. Standifer conducts activities of daily living such as cooking, laundry, shopping, and that she is able to handle her finances.[10] AR 26, 291, 319, 327. The ALJ found that Ms. Standifer has moderate difficulties in social functioning by noting contradictory statements with regard to getting along with family, friends, neighbors, and others. AR 26. The ALJ also noted that Ms. Standifer was able to grocery shop and occasionally attend family parties. *Id.* The ALJ explained that Ms. Standifer's claim that she developed a fear of people is contradicted by her statement that she gets along with authority figures. *Id.* Ms. Standifer also enjoyed a stop at a casino on a road trip with her mother and son. *Id.* The ALJ further explained that with regard to concentration persistence and pace, the medical evidence and function reports only supported a finding of "moderate" difficulties. The ALJ noted that Dr. Cruz assessed Ms. Standifer's concentration as "fair," and that Ms. Standifer denied problems with concentration to another provider. AR 26, 691, 723. Dr. Afek opined that Ms. Standifer had only a moderate limitation in maintaining attention and concentration for extended periods. AR 26, 758. Finally, the ALJ found that Ms. Standifer had experienced no episodes of decompensation. AR 27. Ms. Standifer does not specifically criticize this finding. The ALJ demonstrated her analysis of the paragraph B criteria by discussing the evidence and explaining her reasons for finding that Ms. Standifer did not meet these criteria.

---

[10] Ms. Standifer argues that there is no evidence in the record with regard to her handling money. Doc. 18 at 4. This is incorrect. Ms. Standifer's function reports indicate that she is able to handle money except that she does not like to go out to pay her bills. AR 319, 327. Indeed, Ms. Standifer acknowledges later in her brief that "[t]he ALJ mentioned [that Ms. Standifer] reports she can handle her money, but does not mention [that in] her subsequent report she is worse and can't handle money." Doc. 18 at 20.

Second, Ms. Standifer contends that the ALJ improperly assessed the opinion of her treating psychiatrist, Dr. Mario Cruz, who opined that Ms. Standifer met all the paragraph B criteria for both sections 12.04 and 12.06. Doc. 18 at 4, 21; AR 761–62. Ms. Standifer argues that the ALJ's "assessment is based on unreasonable interpretations of this evidence," and that Ms. Standifer's behavior is "not really inconsistent with her condition." Doc. 18 at 19–20. For example, Ms. Standifer argues that the ALJ unreasonably concluded that Ms. Standifer only had a mild restriction in activities of daily living based in part on Ms. Standifer's "March 27, 2015 Function Report that she cooks daily for up to two hours at one time . . . ." AR 26. Ms. Standifer claims that when she reported it takes two hours to prepare a meal, she was referring to the baking time, not the amount of time she is actively cooking. Doc. 18 at 19. In the function reports, Ms. Standifer and her son indicate that Ms. Standifer prepares her own meals, most of which are baked in the oven, and it takes her two hours. AR 291 ("most food is baked"), 318 ("will use the oven for some meals"), 326 ("everything is baked in the oven except for sandwiches"). The ALJ's conclusion, based on this evidence, that Ms. Standifer "cooks daily for up to two hours at one time," AR 26, is not unreasonable. That Ms. Standifer's interpretation of the evidence is different from the ALJ's does not render the ALJ's interpretation invalid. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotations and citation omitted). Substantial evidence supports the ALJ's conclusions, and the Court will not reweigh the evidence. *Grogan*, 399 F.3d at 1262*; Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993) (holding that although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner).

Third, Ms. Standifer argues that the ALJ erred by not giving controlling weight to the opinions of her treating physicians and by not adopting those opinions which establish that she meets a Listing. Doc. 18 at 21. Ms. Standifer, however, does not clearly specify which treating physicians' opinions she contends were improperly weighed. She mentions three of her treating physicians, Dr. Nickell, Dr. Cruz, and Dr. Afek, and other "multiple providers." Doc. 18 at 22. But Ms. Standifer does not cite to where any of these doctor's opinions are found in the record, nor does she specifically analyze how each physician's opinion is well-supported and consistent with the medical record (which would make the opinion controlling). *See id.* at 21–22.

Drs. Cruz and Afek provided opinions as to Ms. Standifer's ability to perform work-related activities in this case. *See* AR 760–62 (Dr. Cruz), 757–58 and 763–64 (duplicate) (Dr. Afek). Ms. Standifer initially argues that Dr. Afek's opinion—along with Dr. Cruz's opinion and the record as a whole—demonstrates that her combination of impairments equals a Listing. Doc. 18 at 21. Dr. Afek, however, did not offer an opinion with regard to whether Ms. Standifer meets a Listing. Dr. Afek's opinion consists of both physical and mental medical assessments of Ms. Standifer's ability to do work-related activities. AR 757–58. He did not opine that Ms. Standifer's physical or mental impairments meet or equal a Listing. *Id.* Further, the ALJ discussed Dr. Afek's opinion at step four while assessing Ms. Standifer's RFC. AR 35. Ms. Standifer does not attack the ALJ's assessment of her RFC or any of the ALJ's step four findings.[11] Because Ms. Standifer does not rely on Dr. Afek's opinion with regard to the ALJ's

---

[11] To the extent that Ms. Standifer is attempts to argue that her physical condition medically equals a Listing, Dr. Afek did not express this particular opinion. *See* AR 757. Indeed, at the hearing of this matter, Ms. Standifer's counsel acknowledged that none of Ms. Standifer's "physical problems meet or equal a listing of impairments." AR 51. Ms. Standifer further clarified in her reply brief that she contends that the combination of her mental—not physical—impairments met the Listing for mental disorders. Doc. 21 at 3.

step three findings, the Court only will address whether the ALJ properly weighed Dr. Cruz's opinion.

There is no dispute that Dr. Cruz is Ms. Standifer's treating psychiatrist. Before discounting a treating physician's opinion that a claimant meets a Listing, the ALJ must do a treating physician analysis. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Under the treating physician rule, "the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley*, 373 F.3d at 1119. "[T]he opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the claimant's] case record." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)). In analyzing whether a treating source opinion is entitled to controlling weight, the ALJ must perform a two-step process. First, the ALJ must consider whether the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). If the opinion meets both criteria, the ALJ must give the treating source's opinion controlling weight. *Id*. To give anything less than controlling weight, the ALJ must demonstrate with substantial evidence that the opinion (1) is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," or (2) is "inconsistent with other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2).

If the ALJ does not assign a treating source's opinion controlling weight, step two of the analysis requires the ALJ to apply the six factors listed in the regulations to determine whether a treating source's opinion should be rejected altogether or assigned some lesser weight:

1. **Examining relationship**:  more weight is given to the opinion of a source who has examined the claimant than to one who has not;
2. **Treatment relationship**:  more weight is given to the opinion of a source who has treated the claimant than to one who has not; more weight is given to the opinion of a source who has treated the claimant for a long time over several visits and who has extensive knowledge about the claimant's impairment(s);
3. **Supportability:**  more weight is given to a medical source opinion which is supported by relevant evidence (such as laboratory findings and medical signs), and to opinions supported by good explanations;
4. **Consistency:**  the more consistent the opinion is with the record as a whole, the more weight it should be given;
5. **Specialization**:  more weight is given to the opinion of a specialist giving an opinion in the area of his/her specialty; and
6. **Other factors:**  any other factors that tend to contradict or support an opinion.

*See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6) (both effective Aug. 24, 2012 through March 26, 2017); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Watkins*, 350 F.3d at 1301.  As the first two factors make clear, even if an ALJ determines that a treating source opinion is not entitled to controlling weight, the opinion still is entitled to deference.  SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996); *see also Watkins* 350 F.3d at 1300.

"Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating [source's] opinion."  *Watkins*, 350 F.3d at 1300 (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96-2p, 1996 WL 374188, at *5; *Doyal*, 331 F.3d at 762).  "When an ALJ decides to disregard a medical report by a claimant's physician, he [or she] must set forth specific, legitimate reasons for his [or her] decision."  *Drapeau*, 255 F.3d at 1213.  The reasons must be "tied to the factors specified in the cited regulations," *Krauser v. Astrue*, 638 F.3d 1324, 1330

(10th Cir. 2011) (citing *Watkins*, 350 F.3d at 1300–01), and the reasons must be "supported by the evidence in the case record." SSR 96-2p, 1996 WL 374188, at *5.

While an ALJ must consider the factors in the regulations, he or she need not expressly discuss each factor in the opinion. *Oldham*, 509 F.3d at 1258. Nevertheless, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*.

Dr. Cruz opined that Ms. Standifer had marked limitations in activities of daily living, maintaining social functioning, and concentration, persistence, or pace, as well as repeated episodes of decompensation, each of extended duration—which meets the paragraph B criteria of Listings 12.04 and 12.06. AR 761–62. The ALJ gave "little weight" to Dr. Cruz's opinion. AR 25. Ms. Standifer argues that the ALJ failed to explain why she did not follow Dr. Cruz's opinion. Doc. 18 at 18–24. I disagree. The ALJ explained that "Dr. Cruz' opinion that the claimant has a Listing level mental impairment is not consistent with or supported by her treatment records or her daily activities." AR 26. The ALJ described how Dr. Cruz's progress notes indicated that Ms. Standifer was improving with medication, and that Dr. Cruz assessed her concentration as "fair" as opposed to markedly limited as indicated in his opinion. AR 26; *also compare* AR 723 *with* AR 762. The ALJ further explained that Ms. Standifer denied any problems with concentration to another mental health provider. AR 26, 691. The ALJ noted that Ms. Standifer reported she was able to perform activities of daily living such as cooking, laundry, handling her finances, going out alone, driving, and grocery shopping, attending family gatherings, going to movies, and enjoying a road trip with stops to eat and visit a casino. AR 26, 36, 84–85, 291–93, 319, 327, 705. The ALJ also noted Dr. Afek's opinion—that Ms. Standifer has only moderate limitations in her ability to maintain concentration for extended periods—

15

which was consistent with Dr. Cruz's opinion in his progress notes that Ms. Standifer's concentration was "fair." AR 26, 723, 758. Consistency and supportability are legitimate factors that the ALJ considered and discussed when assessing the weight she gave to Dr. Cruz's opinion.

The ALJ's decision is sufficiently specific to make clear to the Court the weight she gave to Dr. Cruz's opinion and the reasons for that weight.[12] Ms. Standifer is not entitled to remand on this basis.

### 2. *The ALJ's Paragraph C findings*

At the time of the ALJ's decision, paragraph C criteria for Listing 12.04 required:

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

---

[12] In support of her arguments, Ms. Standifer provides incomplete citations to "Lopez v. Colvin, D.N.M. 2014," "Griego v. Astrue, D.N.M. 2013," and "Hamilton v. Colven, (D.N.M. 2016)." Doc. 18 at 18, 23, 24. Because she does not provide a complete citation for *Hamilton*, the Court could not identify and review this case. Despite not having full citations, the Court was able to identify *Lopez v. Colvin*, 2014 WL 12796764 (D.N.M. Apr. 3, 2014) and *Griego v. Astrue*, 2013 WL 12334018 (D.N.M. Apr. 2, 2013). Nevertheless, these cases do not assist Ms. Standifer. Ms. Standifer does not explain how *Lopez* supports her claims. The court in *Lopez* found that the ALJ's failure to address the claimant's mental impairments at step two was harmless, and that the ALJ properly considered the claimant's mental impairments at step three. *Lopez v. Colvin*, 2014 WL 12796764, *5–6. The other issues in *Lopez* do not apply to the circumstances in this case. Consequently, *Lopez* does not assist Ms. Standifer. Ms. Standifer's argument that the paragraph B criteria are met "as in Griego" is unavailing. In *Griego*, the ALJ's analysis omitted significant probative evidence relevant under Listing 12.04. *Griego*, 2013 WL 12334018, *6. In this case, as described above, the ALJ discussed the relevant evidence and explained why she found that Ms. Standifer was not disabled at step three.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C). The ALJ determined that Ms. Standifer exhibited

none of the Listing 12.04, paragraph C criteria. AR 27. Paragraph C criteria for Listing 12.06

required that a claimant's anxiety disorders (as defined by the Listing) resulted "in complete

inability to function independently outside the area of one's home." 20 C.F.R. pt. 404, subpt. P,

app. 1, § 12.06(C). The ALJ found that there was no evidence that Ms. Standifer's anxiety

disorder resulted in her complete inability to function independently outside the area of her

home. The ALJ explained that Ms. Standifer's "treatment records and her daily activities do not

support her allegations of agoraphobia." AR 27.

Ms. Standifer contends that she meets the paragraph C criteria for 12.04 because she has

a "current history of a year or more of inability to function outside of a highly supportive living

environment." Doc. 18 at 21. Ms. Standifer first argues that "[t]he ALJ does not discuss how

living with her mother and son, later a cousin, who do the chores, drive her to appointments, and

the grocery store, and allow her to stay in her darkened room, resting and isolating, does not

meet the criteria." *Id.* However, it is not the Commissioner's burden to establish that Ms.

Standifer does not meet a Listing. Rather, Ms. Standifer has the burden at step three to establish

with medical evidence that her impairments meet or equal a Listing. "To show that an

impairment or combination of impairments meets the requirements of a listing, a claimant must

provide specific medical findings that support each of the various requisite criteria for the

impairment." *Lax*, 489 F.3d at 1085. "A claimant's own description of his [or her] impairments

is not sufficient to establish his [or her] disability under the Listings." *Bernal v. Bowen*, 851

F.2d 297, 300 (10th Cir. 1998). Ms. Standifer does not provide specific medical findings or cite

to any authority that demonstrates how her circumstances meet the paragraph C criteria.[13]

Simply because Ms. Standifer lived with her mother over a year is not a "medical finding" and does not establish that she is unable to live outside of a highly supportive living environment. Indeed, the evidence establishes that Ms. Standifer was assisting her mother—and getting paid to do so—during the time she was living with her, not the other way around. AR 70–71, 647.

Ms. Standifer further argues that the ALJ "did not have the post hearing report of her current homelessness, after her mother lost the house, and fear her cousin could no longer care for her." Doc. 18 at 21.[14] Ms. Standifer submitted additional medical records to the Appeals Council on October 26, 2016. Doc. 21 at 10. The additional evidence was from an April 27, 2016 visit at St. Martin's Hospitality Center. Doc. 21 at 11–14. The regulations require that the Appeals Council evaluate the entire record, including new evidence, if it relates to the relevant period. 20 C.F.R. §§ 404.970(b), 416.1470(b). The Appeals Council did not receive the documents prior to its unfavorable decision, however, and did not review the records prior to Ms. Standifer's appeal to this Court. Doc. 20 at 3, n.4. After Ms. Standifer offered proof of her submission (Doc. 21 at 10), the Appeals Council reviewed the additional evidence and determined that it did not provide a basis for changing the ALJ's decision. Doc. 24-1. Ms. Standifer offered the additional evidence in support of her argument that she meets the Listings,

---

[13] Dr. Cruz opined that Ms. Standifer meets the paragraph C criteria for "[r]epeated episodes of decompensation, each of extended duration." AR 761. Ms. Standifer does not argue, however, that she meets the criteria in paragraph C(1), or that the ALJ errored in failing to discuss this part of Dr. Cruz's opinion.

[14] Citing *Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005), Ms. Standifer appears to attempt to shift the burden at step three by suggesting that the ALJ's findings must "conclusively negate the possibility" that she meets a Listing. Doc. 18 at 24. This is not correct. In *Fischer-Ross*, the court was simply demonstrating how the findings at subsequent steps in the evaluation process could confirm the ALJ's findings at step three. 431 F.3d at 733–35. The court explained that the ALJ's RFC findings "conclusively negate the possibility" that the claimant in that case was presumptively disabled under the pertinent Listing. *Fischer-Ross* does not shift the burden at step three to the Commissioner to establish that the claimant does not meet a Listing.

and does not seek remand based on the Appeals Council's failure to review the additional evidence.

While it is true that the ALJ did not have the post hearing report, the additional evidence does not support her argument that she meets the Listings. First, Ms. Standifer's characterization of the report is misleading. The report does not indicate that Ms. Standifer's cousin is caring for her, nor does it state that she is unable to function outside of a highly supportive environment. Rather, the report notes that Ms. Standifer "is currently staying temporarily with a cousin who wants her gone and she is [in] imminent need of housing." Doc. 21 at 11.

Second, the additional records do not support a finding that Ms. Standifer meets a Listing. The health care provider stated that Ms. Standifer "remains highly symptomatic and minimally able to function. . . . However, she also demonstrates numerous strengths including her perseverance, commitment to her treatment and connections to her providers, intelligence and insight, and openness to receive help." *Id*. at 13. The mental status exam indicates that Ms. Standifer had good hygiene, was cooperative and friendly, had good eye contact, and was alert and oriented. *Id*. at 12. Her motor activity, cognition, speech, and language were within normal limits, and her thought process was organized. *Id*. Because Ms. Standifer does not provide sufficient medical evidence that she meets the paragraph C criteria, remand is not warranted on this basis.

### C.  The ALJ's Step Five Findings

At step five, it is the Commissioner's burden to establish that—taking into account the claimant's age, education, work experience, and RFC—work exists in significant numbers in the national economy that the claimant can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001); *Barrett v. Astrue*, 340 F. App'x 481, 487 (10th Cir. 2009). An ALJ may use a

vocational expert at step five to supply an opinion about the claimant's ability to perform work in the national economy. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996).

Ms. Standifer first contends that "the ALJ's hypothetical RFC was not sufficiently evaluated as to [Ms. Standifer's] specific limits and the job tasks. Indeed, no specifics of the manner of performance of the jobs [were] elicited." Doc. 18 at 25. It is unclear from the briefing who Ms. Standifer believes should have "sufficiently evaluated" the RFC—the VE or the ALJ. To the extent that Ms. Standifer is arguing that the VE was responsible for evaluating the RFC, she is incorrect. As the Commissioner points out, "[t]he ALJ, not the vocational expert, is responsible for assessing a claimant's RFC." Doc. 20 at 16 (citing *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000)).

To the extent Ms. Standifer contends that the ALJ failed to properly assess her RFC, she has not sufficiently developed this argument for the Court's review. Ms. Standifer does not attack the ALJ's assessment of her RFC, nor does she argue that the ALJ erred in assessing her RFC. The Court will not consider an issue that a claimant has failed to develop. *Wall,* 561 F.3d at 1066–67 ("The perfunctory presentation of Claimant's argument concerning her residual physical capacity deprived [the district] court of the opportunity to analyze and rule on this issue now raised in detail for the first time on appeal.") (internal quotations and citations omitted) (brackets in original).

Ms. Standifer specifically argues that the ALJ erred by failing to discuss the transferability of skills due to problems arising from her mental impairments. Doc. 18 at 25. Transferability of skills is not relevant in this case, however, because the ALJ—relying on the VE's testimony—found that Ms. Standifer was able to perform only unskilled jobs. The regulations define "transferable skills" as "skills that can be used in other jobs, when the <u>skilled</u>

or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1) (emphasis added); *see also* SSR 82-41, 1982 WL 31389, at *2 (Jan. 1, 1982) ("Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs."). The Commissioner defines a "skill" as:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82-41, 1982 WL 31389, at *2. A skill cannot be acquired by performing an unskilled job. *Id.*

The ALJ found that Ms. Standifer could not perform her past relevant work, which included some semi-skilled jobs. AR 37. The ALJ further found, however, that Ms. Standifer "would be able to perform the requirements of representative sedentary, unskilled (SVP of 2)[15] occupations," such as buckler and lacer, dowel inspector, and circuit board screener. AR 38. The ALJ did not need to discuss the transferability of skills of Ms. Standifer's past relevant work

---

[15] The Commissioner uses material published by the Department of Labor (DOT) to classify occupations as unskilled, semi-skilled, and skilled. 20 C.F.R. §§ 404.1568, 416.968. The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 C.F.R. §§ 404.1568, 416.968, unskilled work corresponds to an SVP of 1 to 2; semi-skilled work corresponds to an SVP of 3 to 4; and skilled work corresponds to an SVP of 5 to 9 in the DOT. SSR 00-4p, 2000 WL 1898704, at *3.

because no skills are necessary to perform unskilled jobs.[16]  Thus, whether Ms. Standifer had

transferable skills simply does not matter.

Finally, Ms. Standifer criticizes the ALJ for relying on the VE's testimony with regard to

the jobs identified.  Doc. 18 at 26; Doc. 21 at 4–6.  She argues that it is unclear whether the jobs

identified exist, and that the ALJ did not demonstrate how the number of jobs was obtained.  *Id.*

This argument is without merit.  As the Commissioner explains, "agency regulations and policy

direct ALJs to consider the [Dictionary of Occupational Titles ("DOT")] as the primary source of

occupational information used in disability determinations."  Doc. 20 at 17 (citing SSR 00-4p,

2000 WL 1898704, at *2; 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); SSR 82-61, 1982 WL

31387, at *2).  Although the DOT may be dated, ALJs still may rely on it.  The Court's role in

social security cases is limited to determining whether the Commissioner's final decision is

supported by substantial evidence and whether the correct legal standards were applied.  The

Court will not determine the validity of the resources used by the Commissioner when the

Commissioner has followed the correct legal standards.  Here, it was proper for the ALJ to rely

on the VE testimony based on the current DOT.  *See also Haddock v. Apfel*, 196 F.3d 1084,

1089–90 (10th Cir. 1999) (holding the ALJ is allowed to rely on the DOT at step five); *Rivera v.*

*Berryhill*, 242 F. Supp. 3d 1226, 1244 (D.N.M. 2017) ("the regulations explicitly list the DOT as

---

[16] In support of her position, Ms. Standifer cites to "Hargis, 1490," "Hargis, 1491," and "Hargis, 1492."  Doc. 18 at 25–26.  Although Ms. Standifer did not provide the full citation, the Court was able to find *Hargis v. Sullivan*, 945 F.2d 1482 (10th Cir. 1991).  This case, however, does not assist Ms. Standifer.  In *Hargis*, the ALJ "did not present to the vocational expert any difficulties manifested by the claimant's mental impairment."  *Hargis*, 945 F.2d at 1491.  In this case, the ALJ provided the VE with a hypothetical that included limitations based on Ms. Standifer's mental impairments.  AR 27–28, 89–90.  Ms. Standifer does not criticize the RFC or the hypothetical presented to the VE.  *Hargis* also addressed the issue of whether the ALJ properly elicited testimony from the ALJ with regard to the transferability of skills despite the claimant's mental impairments.  *Hargis*, 945 F.2d at 1491–92.  But as discussed above, the transferability of skills is not an issue in this case because the jobs identified by the ALJ as jobs Ms. Standifer could perform were unskilled jobs.

an example of a publication from which the administration will take administrative notice of job data").  Whether the DOT is relevant to today's job market is not an issue for this Court to decide.

With respect to Ms. Standifer's challenge to the VE's testimony about the approximate number of identified jobs that exist in the national economy, the Commissioner correctly explains that:

> Both Social Security regulations and Tenth Circuit case law make clear that an ALJ may rely on a vocational expert's testimony in evaluating whether a claimant can do work that exists in significant numbers in the national economy.  *See* 20 C.F.R. § 404.1566(e); SSR 00-4p, 2000 WL 1898704, at *2; *Gay*, 986 F.2d at 1341.  The ALJ does not have to determine an exact number of jobs with scientific precision; the question is instead whether the claimant has a meaningful vocational opportunity despite the limiting effects of his or her particular impairments.  *See* 42 U.S.C. §§ 423(d)(2)(A), 1382a(3)(B); 20 C.F.R. § 404.1566(a)–(c); *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

Doc. 20 at 18.  Plaintiff offers no authority to support her position that the ALJ erred in relying on the VE testimony with regard to the number of jobs that exist in the national economy. Counsel's argument alone is not sufficient to require remand.

## VI.    Conclusion

The ALJ's failure to find that Ms. Standifer's plantar fasciitis a severe impairment was not an error at step two.  The ALJ properly evaluated Ms. Standifer's treating physician's opinion and found at step three that Ms. Standifer's impairments, alone or in combination, did not meet a Listing.  The ALJ did not err at step five by relying on the VE testimony to find that there were a sufficient number of jobs in the national economy that Ms. Standifer could perform despite her impairments.  Accordingly, remand is not required in this case.

IT IS THEREFORE ORDERED that plaintiff Tina Louise Standifer's Motion to Reverse or Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supportive

Memorandum (Doc. 18) is DENIED, the decision of the Commissioner is AFFIRMED, and this

case is DISMISSED with prejudice.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent